AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>JAMES MICHAEL TOMASSO,<br>WENSLEY ROBIN MCFARLANE, and<br>NICHOLAS CHARLES HIGGINS<br><br>*Defendant(s)* | )<br>)<br>) Case No. 11-8253-JMH<br>)<br>)<br>) |

FILED by ____ D.C.

JUL - 7 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 1, 2009 to March 30, 2010__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. SECTION 1349 | The defendants knowingly and willfully conspired and agreed together and with each other, and with other persons known and unknown, to commit mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Paul R. Hollinger, Special Agent, F.B.I.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/07/2011

_____
*Judge's signature*

City and state: West Palm Beach, Florida

JAMES M. HOPKINS, U.S. MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT

## A. INTRODUCTION

I, Paul R. Hollinger, having first been duly sworn, do hereby state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice. I have been so employed for over six years. In that time I have worked on several complex fraud investigations. I am currently assigned to the Miami Division's West Palm Beach Office of the FBI. My duties include the investigation of violations of mail fraud, wire fraud, and other sophisticated fraud schemes. Through my experience in the course of these investigations, I have become familiar with telemarketing fraud.

2. The following information is based on my personal knowledge, discussions with City of Boca Raton Police Department detectives, information provided by cooperating defendants, and the review of documentary evidence. Where the statements of others are referenced, they are related in substance and are not verbatim. This Affidavit is being submitted solely to establish probable cause to believe that defendants JAMES MICHAEL TOMASSO, WENSLEY ROBIN MCFARLANE, and NICHOLAS CHARLES HIGGINS have conspired to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349. This affidavit, therefore does not contain all of the information known to affiant or other law enforcement agents participating in the investigation concerning the offense.

## B. FACTS

### Telemarketing scheme to defraud

3. In or about June 2009, defendants JAMES MICHAEL TOMASSO, NICHOLAS CHARLES HIGGINS, and WENSLEY ROBIN MCFARLANE, and others were engaged in a telemarketing scheme, operating under various names such as Euroamerican Timeshares, LLC., E.A.T. Sales, LLC., National Timeshare Liquidators,

1

LLC., and Real Estate Purchasing Syndicate, LLC. These and similarly named companies engaged in a telemarketing scheme using boiler rooms located in Boynton Beach and Boca Raton, Florida. The scheme targeted timeshare owners throughout the United States and Canada but conspicuously avoided victim owners located in Florida. The scheme involved false and fraudulent representations and promises that the companies were going to purchase the victim's timeshare. They further falsely represented that they were financially prepared to purchase the victim's timeshare or had arranged to sell the victim's timeshare to another buyer. The sale was on condition that the victim owner paid to them up-front fees of as much as several thousand dollars for closing costs and related expenses. These fees were falsely promised to be maintained in an escrow account and were to be returned to the victim at the sale of the timeshare. The scheme also solicited the timeshare owner to sell their unused ("banked") vacation weeks for thousands of dollars if the victim paid them various additional upfront fees.

4. The timeshare owners were initially contacted via telephone by telemarketers holding a position referred to in the industry as "openers" and/or "fronters." The victims were identified from "lead sheets" procured from other telemarketing businesses. The "opener" would attempt to entice the timeshare owner in the "sale" of the timeshare to them. Once interested, the victim would be forwarded to a "closer." The "closer" was responsible for negotiating the purported purchase of the timeshare on behalf of the business. The "closer" would discuss the terms of the contract, such as the purchase price of the timeshare, the initial up-front fees the victim would pay and the purported closing date. The "closer" would then cause the contract to be e-mailed, mailed, and/or faxed to the timeshare owner. The timeshare owner would be instructed by the "closer" to mail or transmit the up-front fees and to obtain a confirmation number from the mail carrier. The victims were routinely told that the closing was to occur in merely a few weeks after they mailed in their fees.

5. The defendants and other coconspirators used fictitious names when transacting business with the victims. Moreover, to lend an air of legitimacy, defendants TOMASSO and MCFARLANE, as well as others, would falsely identify themselves to the victims as the "Director of Sales." During the course of the scheme, the telemarketers would tell the victims that their business was using Royal Title Services for title searches. Royal was a dummy company created by defendant TOMASSO and another to further the scheme. The telemarketers would sometimes reference a real title company and falsely tell the victims that they were using that company; they never did.

6. The name of the company used by the conspirators would frequently change after just a few months. This change of name aided their evasion of law enforcement scrutiny. Often times after the name changed, victim owners were re-solicited for additional up-front fees under the new company name. The conspirators would explain to the victims that the old company had closed and this new company was going to go ahead with the purchase but needed additional up-front fees. As an inducement, they would falsely tell the victims that the victims would be credited with the fees they had paid to the previous company at the time of the new closing.

7. There were neither closings nor purchases as promised in the telephone calls and contracts. Virtually all of the money received by the scheme was pocketed by the organizers and telemarketers. The individual telemarketers who sold the timeshares received approximately one-third of the solicited funds; the balance was kept by the organizers of the fraud.

8. Between July 2009 and March 2010, defendant JAMES MICHAEL TOMASSO functioned as an "opener" and "closer." Defendant JAMES TOMASSO, using an alias, contacted numerous timeshare owners representing to them that his "company"

3

had an interest in purchasing their timeshares. When acting as a "closer," defendant TOMASSO, by telephone, negotiated the amount of money the victim would have to send for up front costs before the company would "purchase" the timeshare. Defendant TOMASSO used the following fictitious names: Jimmy Johnson, James Michaels, and William Davis. On or about August 8, 2009, defendant TOMASSO, using the alias name "James Michaels" caused to be signed and mailed, by U.S. mail, a contract, on behalf of E.A.T. Sales, for the purchase of a timeshare belonging to D.E. of Wisconsin. On August 31, 2009, victim D.E. returned, via FedEx, to James Michaels at E.A.T. Sales, the signed contract and a $1,400.00 check. When interviewed, defendant TOMASSO admitted to his involvement in the scheme as set forth in the paragraphs above.

9. Between June 2009 and March 2010, defendant WENSLEY ROBIN MCFARLANE operated as the office manager of several telemarketing businesses involved in the above described scheme. He also acted as a "closer" using the alias "Collin Finnigan." On or about October 6, 2009, defendant MCFARLANE caused to be signed a contract for the purchase of a timeshare by E.A.T. belonging to R.N. of California, using the name "Collin Finnigan". That contract was then faxed to R.N. On or about October 14, 2009, R.N. of California sent, via U.S. Postal Service, a check in the amount of $4,400.00 and a signed contract to Equity Asset Traders for whom defendant MCFARLANE was working. On or about October 14, 2009, R.N. received a telephone call from a telemarketer from E.A.T./Equity Asset Traders asking for the tracking number of the package containing the check and signed contract. R.N. provided the telemarketer the tracking number. During an interview affiant conducted with defendant MCFARLANE, he stated that he was responsible for distributing lead sheets to the various telemarketers. He also stated that he acted as an intermediary among the "openers", "closers" and the organizers of the fraud. Defendant MCFARLANE admitted that no portion of

the up-front fee was being used to pay for any timeshare or real-estate related expenses or title/deed searches as was being represented by the telemarketers. He also stated that no timeshare was actually purchased by any of the companies for which he worked; there were no closings, no sales, and no checks were ever actually sent to a timeshare owner as a result of a closing or settlement. MCFARLANE said that he knew this because all of the processing paperwork was funneled through him. He admitted that after he became comfortable with the pitch he began "closing" deals and signing contracts. Finally, MCFARLANE noted that some of the contracts referred to a refund of the up-front fees in the event the contract was not fulfilled. Defendant MCFARLANE stated that no refund was ever returned to an unhappy client even though he knew complaints were coming in to the office and that the victims were being lied to.

10. Between June 2009 and March 2010, defendant NICHOLAS CHARLES HIGGINS acted as an "opener" and an administrative assistant on behalf of the above telemarketing businesses. Defendant HIGGINS was originally hired as a telemarketing "opener," however, he was unable to operate successfully in that capacity. On behalf of Real Estate Purchasing Syndicate, defendant HIGGINS signed a contract, albeit in his true name, for the purported purchase of a timeshare from F.S. of Texas. Defendant HIGGINS was also responsible for answering telephone complaint calls from the victims. The victims would routinely ask to speak to their "closer" about the delayed status of the "sale." When necessary, defendant HIGGINS would falsely tell them that the "closer" was unavailable in order to stall them. The co-conspirators used defendant HIGGINS as an officer of National Timeshare Liquidators and Real Estate Purchasing Syndicate. Defendant HIGGINS, along with another co-conspirator, signed the signature card establishing a corporate bank account for Real Estate Purchasing Syndicate. In an interview, defendant HIGGINS admitted that he cashed checks on

behalf of co-conspirators and handed over all of the cash to them. He stated that he believed the reason he was obtaining cash was to launder their money. Defendant HIGGINS was responsible for drafting, faxing and e-mailing several contracts to victims. HIGGINS admitted that he and another co-conspirator developed a contract that the enterprise used to send to the victims. HIGGINS stated that another of his tasks was to enter "sales" related information electronically into the sales contracts on the computer. He said that once completed, he would then e-mail the contracts to the victims. HIGGINS admitted that he sometimes signed the contracts using the fake names of the "closers" in order to complete the contracts. Defendant HIGGINS occasionally used the alias "Jordan Markum" when answering phones for the enterprise. Defendant HIGGINS' name was placed on the mail box contract as one of two people empowered to retrieve mail on behalf of National Timeshare Liquidators and REPS from the mail drop. HIGGINS confirmed that his duties regularly included retrieving the mail from the mail drop location. HIGGINS stated that on occasion he was given cash by co-conspirators to pay employees of the mail drop. In return, they would not place the mail in the box, avoiding postal scrutiny, in order for it to be delivered directly to HIGGINS. They would also alert HIGGINS of any law enforcement inquiries concerning the businesses which HIGGINS would then relay to co-conspirators.

    11.    Based upon review of financial records it has been determined that the above scheme generated revenues in excess $3 million dollars. Defendant TOMASSO received $64,910 and defendant MCFARLANE received $150,754. Checks totaling $78,812 were issued in the name of defendant HIGGINS; some of which were deposited or cashed against his personal bank account.

C.  CONCLUSION

12.  Based on the foregoing there is probable cause to believe that defendants JAMES MICHAEL TOMASSO, WENSLEY ROBIN MCFARLANE, and NICHOLAS CHARLES HIGGINS did knowingly and willfully conspire to commit mail and wire fraud, in violation of Title 18, United States Code, Sections 1341, 1343; all in violation of Title 18, United States Code, 1349.

FURTHER YOUR AFFIANT SAYETH NAUGHT

_____
Paul R. Hollinger, Special Agent, FBI

Sworn to before me this
7th day of July, 2011

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 11-8253-JMH

## BOND RECOMMENDATION

DEFENDANT: James Michael Tomasso

$100,000.00 (Personal Surety)
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   KERRY S. BARON

Last Known Address: 6635 Houlton Circle

Lake Worth, FL  33467

What Facility:

Agent(s):   S/A Paul R. Hollinger (FBI)
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
505 S. Flagler Dr. Suite 500
West Palm Beach, FL  33401

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 11-8253-JMH

## BOND RECOMMENDATION

DEFENDANT: Wensley McFarlane

$100,000.00 (Personal Surety)
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   KERRY S. BARON

Last Known Address: 5574 Lake Osborne Drive

Lake Worth, FL  33462-2101

What Facility:

Agent(s):  S/A Paul R. Hollinger (FBI)
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
505 S. Flagler Dr. Suite 500
West Palm Beach, FL  33401

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 11-8253-JMH

### BOND RECOMMENDATION

DEFENDANT: Nicholas Charles Higgins

$100,000.00 (Personal Surety)
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   KERRY S. BARON

Last Known Address: 12785 Cocoa Pine Drive

Boynton Beach, FL  33436

What Facility: _____

Agent(s): S/A Paul R. Hollinger (FBI)
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
505 S. Flagler Dr. Suite 500
West Palm Beach, FL  33401

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No.   11-8253-JMH

UNITED STATES OF AMERICA

vs.

JAMES MICHAEL TOMASSO,
WENSLEY ROBIN MCFARLANE, and
NICHOLAS CHARLES HIGGINS,

Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?   ____ Yes   _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   ____ Yes   _X_ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
KERRY S. BARON
ASSISTANT UNITED STATES ATTORNEY
Admin No.: A55000040
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
TEL: (561) 820-8711
FAX: (561) 820-8777
Email: Kerry.Baron@usdoj.gov